Good morning, Your Honors. My name is Farrah Loftus. I'm here on behalf of the petitioner. Your Honor, this case, the IJ denied the petitioner's asylum, and the BIA adapted the IJ's decision based on lack of documentary evidence. And the BIA denied the – denied – actually affirmed the IJ's – the BIA adopted the IJ's decision, and there was no substantial evidence to hold that decision. The petitioner is a married male from China, and he was – he had a daughter that was born November 4, 2000, and his wife wanted to have another child. She got pregnant in May 2001, and then he was sent – she was sent a notice from the family planning officials in China to go for IUD operation, and she wanted to have a second child. She was pregnant. She decided to hide in her relative's house to have the – to have the baby. And officials, they found out about her pregnancy in October 2001. They forcefully took her and aborted the baby when she was six months pregnant. And they asked her for her husband's whereabouts, which she – to turn himself in for sterilization, which she declined to know her husband's whereabouts. In this case, Your Honor, the immigration judge and the BIA, they both evaded the real issue in this case. They concentrated on a minor inconsistency in the petitioner's testimony. The issue in this case was mostly the past persecution which the petitioner suffered in this case. Based on the matter of XPT and CYZ, his – the petitioner's wife was forced to have an abortion, forced abortion. And that – based on those cases, that conclude the presence of past persecution. And when there is a past persecution, there's a presumption of future persecution. Excuse me. Let's go over that again, Ms. Lostis. Are you saying that the fact that the petitioner's wife was forced to undergo an abortion establishes past persecution on his part? Yes, Your Honor. Based on the matter of CYZ, they mentioned that the Board of Immigration Appeal found that the applicant established past persecution where his wife was forcefully sterilized. Now, if that's so, then there would be the presumption of future persecution. Yes, Your Honor, unless it's rebutted. And rebuttal. And was there any rebuttal by the government to future persecution? We believe that there was no rebuttal, Your Honor. They cited the country profile as to – there are sections that they mentioned that the second child is allowed. But even in the country report mentions that if the first child is a daughter, the families, they have to wait four years to get a permission for a second child. And in this case, it was approximately after five to six months later that she got pregnant with the second child and she wanted to keep the second child. So she didn't wait. And that's even also in the country report. And the government basically did not present any document to show that the country condition has changed. Even though they said that having more than one child is becoming a norm, but it still doesn't mean that it is legal and it's allowed. Just because people break it doesn't make it legal. And in this case, he broke the law of one-child-per-family policy because his first child was a daughter. He didn't wait four years, and there was no evidence to rebut that past prosecution. And I'm sorry, Your Honor, if I may reserve two minutes for rebuttal. Ginsburg-McCarran, Jr. Sure. But didn't he say that he didn't even go to ask permission of the authorities? Your Honor, basically, he knew that he had to wait four years, and he didn't. She got pregnant. This wasn't a planned pregnancy. She basically did not insert IUD, and she got pregnant, and she was told to have an IUD, go and have an IUD procedure. And when she knew that she was pregnant, she avoided that. Basically, they did not they knew that they had to wait four years. And he didn't apply because she got pregnant. Ginsburg-McCarran, Jr. Well, the other part of this record that I'm having trouble with is the fact that if he had an objective fear of persecution based on the family's policy in China, why wasn't he taken and sterilized or whatever when the authorities came to his parents' house? Your Honor, in his testimony, his application, he mentioned that when they took the wife to the hospital because she was living with her relatives. When she got pregnant, she went to her relatives' house to stay in hiding. And October 2001, they found out about her whereabouts and went to take her to have an abortion. They asked her specifically to tell your husband to come in for a sterilization, and she said that she didn't know where his whereabouts. And they didn't go after him because they didn't know where he was, and he was in hiding going many places. He was with his parents when they came and took his parents away for practicing Balangong. Yes, Your Honor. Again, he – this was – he mentioned that he had moved a lot. And even though he was living at his parents', but he was moving around a lot. Whether they knew where his parents lived, we don't know. It's speculation. But basically, he claimed that he was in hiding, and he – after his wife's abortion, basically, he wanted to avoid being sterilized. And he didn't turn himself in as he was told. Okay. And there are – there are – the BIA have basically adopted the – adopted IJ's decision, irrespective of adverse credibility. The BIA mentioned that there is a – there's no – there's not sufficient documentary evidence that she had suffered abortion. Your Honor, BIA was mistaken in the fact that obtaining abortion documents from a government who – from a government who's forcing abortion on people, it's – it seems to be unreasonable and almost impossible. A lot of cases have mentioned in a matter of our alumni column, it says that it's inappropriate to base an adverse credibility determination on the applicant's inability to obtain corroborating affidavit from relative or acquaintances living outside because of such corroboration is almost never easily available. In this case, the judge and also the BIA have mentioned that there's no document as the abortion and also the arrest of the parents. Those are the documents that they're not reasonably – easily obtained because the government is not going to give documents as to the arrest – illegal arrest based on the Falun Gong – the parents' incarceration. This is not easily obtainable. And also the abortion. It's not easy to get a certificate of abortion when it's done by force. And also the requirement of family affidavit. Your Honor, I'm kind of baffled with this kind of requirement because sometimes in cases when families provide affidavit, the court basically said that they're self-serving. Anybody can write any letter. But in this case, there was no affidavit for that. The judge and INS – the BIA, they required documents when even providing those documents, for example, affidavit from family could be just viewed as a self-serving documentation and to require documents to prove abortion, the pregnancy, when it was in hiding and against the one-child-per-family policy in China and providing documentation as the parents' arrest. Again, those are not reasonably obtainable. And – All right. Counsel, did you want to reserve some time? Yes, Your Honor. All right. Thank you. Good morning. May it please the Court, my name is Arthur Rabin. I represent the respondent in this case, John Ashcroft. In this immigration case, substantial evidence supports the Board's decision. The petitioner failed to demonstrate his eligibility for asylum as he had the burden of proof and persuasion to do, and no reasonable fact-finder would be compelled to conclude otherwise. Initially, I want to apologize to the Court. I'm under a cold right now, so if my voice suddenly gets somewhat low, I apologize and please ask me to speak up. Well, Counsel, this is one of those cases I mentioned to the prior government counsel from Washington where the Board says we adopt and affirm the decision of the immigration judge, and usually if you adopt it, you've adopted it, and that's the decision. And then they say – cite a case and say, noting that adoption or affirmance of a decision of an immigration judge in whole or in part is simply a statement that the Board's conclusions upon review of the record, which would imply de novo review, right, in which case we'd review the BIA decision, not the IJ decision. So it's pretty inconsistent on the question of which decision are we reviewing. Your Honor, the government will submit that in this particular case, unlike the other one, there is an express adoption and affirmance, and thus you must look at both decisions. What I think happened was the Board under Bourbonneau, under his authority there, just emphasized a different alternative finding of the immigration judge in a different order than he did. Counsel, your – the prior counsel just argued because it didn't expressly say adopt and affirm, we look at the IJ's reasons. Well, I think her argument was that there's nothing else to look at. Right, but my point is this ought to be cleared up. The BIA can't be above saying we adopt and affirm and say they did de novo review, because which decision do we review? I'm sorry, Your Honor. I don't read it as saying they did a de novo review here. I just see it as an alternative, basically an alternative emphasis on a separate conclusion that the immigration judge did. Here the Board said we adopt and affirm the adverse credibility finding. But regardless of that, we don't find any direct or specific evidence in this case, as Petitioner had the burden to do, and thus we look at corroboration. And they said we don't find sufficient corroboration. So basically they did, as an analytical test, they looked at – basically, they took the – they adopted the adverse credibility finding. But then they said, look, despite that, let's look at the direct and specific evidence that, as the burden requires, that was presented here. They found it was insufficient. And then they said, well, let's look at what documents were presented. And they found that the documents that could have been reasonably presented were not. Even the one from a sister who's in the United States that Petitioner testified. Mr. Raven, you talked about the framework of the analysis here. And Ms. Loftus just told us that we have a case that says that if the wife has been forced to undergo an abortion, that that constitutes past persecution on the part of the husband. Now, assuming that – and that appears to be our case law. Now, if that's so, then there was past persecution here. And the Board said, no, there wasn't any past persecution. But if that's so, there was past persecution. And where would that take us, assuming that's so? I mean, again, you have to look at the analytical – first of all, they didn't believe that that happened. They found there was an express adverse credibility finding of the immigration judge in three different places saying, I don't believe this happened. I don't believe that she suffered and had an abortion. That she – that the abortion never happened. So they said, well, you haven't carried your burden of even showing that she had an abortion. That's correct, Your Honor. Thus, we don't get there, as Ms. Loftus has argued. She's arguing ipso facto, if you find that the abortion happened, thus there was a past persecution. But in this particular case, what the immigration judge and the Board found was that it never happened. They just did not believe that it happened. There was insufficient direct evidence presented that it happened. And there wasn't sufficient evidence to corroborate that it happened. He was incredible. So they – the I.J. says he's incredible. So we don't believe that she ever had the abortion. That's correct, Your Honor. And that – and there was no other – and he failed to show any other past persecution or reasonable fear of future persecution. Yes, Your Honor. I mean, the only other claim that he had was an imputed claim based on his parents' participation in Falun Gong activities. I see. So even there, the I.J. found numerous inconsistencies, which I could go over if you like, that he just did not believe that those happened either. Thus, if you look at either claim, whether it's the forced sterilization or the imputed forced abortion through his wife or the – through his parents, through the Falun Gong, we don't get there because he was just simply not credible. And then taking a look at some of these inconsistencies, he says that his wife, for example, was forced to – to have an abortion. She received an IUD notice, an insertion notice in May. She fled to her uncle's house, and then that's where she was finally found by the authorities, and she was forced to undergo in October of 2001 a forced abortion. And so he says, supposedly, that he also received a letter from the authorities saying that he must undergo forced sterilization. Now, neither of these documents are in the record. He was asked as to where they are. He says plainly, quote, I don't know, which is implied the I.J. found implausible. Then he was asked, well, why didn't you – he testified he had had no contact with his wife whatsoever after October 2001, which again was found to be implausible because he said he was supposedly trying to have another child with this woman. Yet he had no contact with her following 2001, and then he had no contact with her after coming to the United States. Again, if this man is trying to have children and he says he's afraid of forced sterilization and he is undergoing persecution due to the child – China's one-child policy, we don't get there because he has no contact with his wife if he's trying to make this up. So it's not credible. Second of all, there's direct refutation in the record of these claims. Under the country report and the country profile that was submitted by the government, specifically in the – in the Fujian province that he lives in, it specifically states there that, one, a child, when parents have a daughter and they wish to have a second child, they are permitted to do that. Now, what happens, opposing counsel pointed out, yes, but they must ask for permission and they wait a number of years, four years. Well, in this particular case, he never asked for permission, even though he could have. And second of all, the country report says that that four-year period is very lax and it's never enforced. So he could have done that and it could have happened. Second of all, forced sterilization. He says he's afraid of returning due to forced sterilization. But the report says, refuting what he said, that there is no forced sterilization in his province, where in a – in an area that he lives in, they only force sterilization on people who have two or more children. He only has one, thus making it, once again, implausible and inconsistent, his claim that he's afraid to return, and that's his claim for – afraid of any future persecution. Thus, to sum up here, now, if Your Honor wants, I could present counterarguments on the Fallon-Gong claim if the Court is interested. The inconsistency presented there also. Counsel didn't argue that. So we'll take arguments from the briefs. Yes, Your Honor. Just to sum up then, Petitioner's claim here is insufficient and substantial evidence supports the decision of the Board. And because there was specific cogent reasons presented by the immigration judge as to why the Petitioner was not credible as to either the Fallon-Gong claim or the abortion and forced sterilization claim, the Court should defer to those findings. But even if not, then the Court should look at the actual evidence that was presented and find that there was no direct – direct and specific evidence and there was no sufficient corroboration from either the wife, who says she underwent all this, no notices that he says he found, that he received, that he was afraid of. He said he received – he and his wife received help from his uncles and aunts. No – no statements from them. He says his sister is in the United States who also received asylum. No statement from her. And this would be reasonable to do. That's the one that I have a concern about. The one that was in the United States that I will ask your opposing counsel about. I'm sorry, Your Honor, I don't – The fact that he has a sister in the United States and he didn't get a letter from her, to me, seems particularly compelling because there wasn't – there isn't that foreign land impediment. Absolutely, Your Honor. And in the R28J letter that we cited, there's numerous case law from this Court. So there's some supplemental authorities that say where it's reasonable to expect some kind of – where it's easy to obtain, there should be corroborating evidence when it goes to the adverse credibility or there is no sufficient directive to the evidence. What would a letter from a sister have shown? Had she been in China or something? Your Honor, yes. He said he had two siblings in China. One was a sister and a brother. The brother remained in China. The sister came here and received asylum. He was there when all of this went down. It's not exactly clear from the record, Your Honor, as to why she received asylum. He just said that she did. So there is no – I mean, other than her knowledge of that this is her brother and this is what happened to him based on her conversations with her family members – I mean, never mind the parents didn't submit anything either, even though he says that there's relatives who are in contact with them. Right. But not even the sister who's in the United States. So just to sum up, there is no compelling evidence to find against the Board in this case. Thank you very much. Thank you, counsel. Your Honors, the fact that there was no letter of Davis that provided from the sister in the United States, again, it's not clear in the facts, but she had been living in the United States, so she could not have provided – she wasn't witness to any events, and maybe did not occur to Respondent to provide any document from her asserting to things that she has not observed or cannot testify to. We don't know that. And to hold Respondent – Petitioner to claim – to deny his claim based on one specific document, we don't know she's been – we don't know how long she's been in the United States or why she didn't provide that. Maybe she did not feel that she knew enough about the conditions or his situation in trying to write the letters. Again, the judge – the immigration judge evaded the main issue, which was past persecution. And the judge found that Petitioner was not credible based on several other inconsistencies which were minors. For example, the fact that he did not put many addresses, he just put one address on his application. The fact that he did not contact his wife. Those are, again, they're not going to the heart of the case. The judge mainly concentrated on the incident that happened, the crawl happened in the house when they were arresting Petitioner's parents. And the fact that he could not provide anything in document regarding pregnancy or arrest, again, those documents are not easily obtainable. And it's unreasonable for immigration judges to require documents when it's impossible to get a document from the government of China saying that we are breaking the law, we're forcing abortion. Again, in country – in Fujian province, again, the government does not condone forced sterilization and abortion, but even the country report mentioned that it does still exist in China. Not as often, but still exists. And, again, this is – there's a norm that you can have more than two, but you still have to go through that waiting period if you want to abide by the laws. And the inconsistency that the judge denied my client's asylum base was, again, minor. And a lot of cases have referred before that the character of the inconsistency such as year of death, squad incident, length of time, when time men were sheltered from death squad and whether payment was made for accommodation as minor and immaterial to Petitioner's fear of safety, that's a matter of Viloria Lopez. And also a matter of Martinez-Sanchez. They mentioned that characterizing Petitioner's inconsistency with respect to certain dates and number of his children as trivial errors. Again, the fact that he omitted the resident on his application as one address, he – he may have considered his parents' address as his permanent resident and not mentioned all the other addresses that he moved around. He may have not considered those addresses as his residence. His primary address, mailing address, was his parents, and he included that in his application. Those are minor inconsistency and trivial, and the courts basically did not even address the fact of the wife's abortion, forced abortion. The court specifically concentrated on the minor inconsistency as when the call happened, the fact that he did not attempt to see his wife. It was approximately 5 to 6 months. Again, he could be fearful of his wife. He may not want to contact his wife. That should not be a reason for an immigration judge to deny his asylum. It does not go to the heart of the case. And the right counsel, do you want to sum up? Because you're well over your time. Basically, there was no substantial evidence to adopt the immigration judges for BIA abuse at its discretion. And the fact that there was a birth certificate from the child and those documents were easily obtainable and was obtained and other documentation, it's not reasonable to require it when it's not possible for the Petitioner to obtain to provide his relief or asylum. All right. Thank you very much, Counsel. Zhang v. Ashcroft will be submitted. And I believe the next three cases have been submitted on the briefs will be submitted today, Navarro-Palaio v. Ashcroft, U.S. v. Soto, and U.S. v. Rodriguez-Simo. We'll take up U.S. v. Plancardi-Alvarez.
judges: Browning, Thompson, Wardlaw